**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MORTGAGE BANKERS ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>JENNIFER DAVENPORT, in her official capacity as Attorney General of New Jersey; and YOLANDA N. MELVILLE, in her official capacity as Director of the New Jersey Division on Civil Rights,<br><br>Defendants. | Civil Action No. 2:26-cv-11418<br><br>**COMPLAINT**<br><br>(Declaratory and Injunctive Relief Sought) |

## INTRODUCTION

1. The U.S. Constitution prohibits any government, state or federal, from either discriminating on the basis of race or coercing private parties to do so themselves.

2. In addition, certain Federal and state laws have been interpreted to forbid some racially neutral policies when those policies have a “disparate impact” on an identified group. The ostensible purpose of such disparate impact liability is to smoke out “disguised animus that escape[s] easy classification as disparate treatment.” *Texas Dep’t of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 540 (2015).

3. However, liability based on disparity creates constitutional risks because it can cause race "to be used and considered in a pervasive and explicit manner," requiring businesses to evaluate the racial outcomes of their policies and make decisions because of those outcomes. *Inclusive Communities*, 576 U.S. at 543. For example, lenders confronted with statistical racial disparities they did not create may find themselves under pressure to choose loan or rental criteria to achieve some ideal of racial balance.

4. Accordingly, the Supreme Court has permitted disparate impact liability only in conjunction with certain safeguards. Without these safeguards, disparate impact regimes "inexorably lead" to serious constitutional concerns. *Inclusive Communities*, 576 U.S. at 542 (citation omitted).

5. These safeguards include: a robust requirement that a challenger identify a specific policy of the business that caused the disparity; leeway for businesses to defend their nondiscriminatory policies on the grounds that they advance "valid" interest[s];" and a challenger's burden to identify an alternative that serves those interests as effectively. *Inclusive Communities*, 576 U.S. at 540–45.

6. These safeguards form a constitutional floor; a disparate impact regime without these safeguards ultimately compels businesses to engage in unlawful racial balancing.

7. Ignoring these constitutional concerns, New Jersey's Division on Civil Rights (the Division) adopted new Rules Pertaining to Disparate Impact Discrimination, N.J.A.C. 13:16 (the Rule), in December 2025, expanding the State's disparate impact regime well beyond the previously established federal baseline and discarding or fatally undermining the safeguards the Court pronounced as essential.

8. The Rule puts New Jersey businesses in a double-bind; the only sure way to avoid liability is to adopt actively race-conscious policies, and to seek to balance demographic groups. Indeed, the Rule provides that an "interest in achieving diversity or increasing access for underrepresented or underserved members of a protected class" may itself justify a challenged practice. N.J.A.C. 13:16-2.4(c). Federal law, however, forbids any decisions made "because of" an applicant's race, and forbids state laws which purport to "require or permit" any action which would be a discriminatory housing practice. 42 U.S.C. § 3605(a); 42 U.S.C. § 3615.

9. The Constitution does not permit a state to force private parties into that dilemma. Plaintiff Mortgage Bankers Association brings this action on behalf of itself and its members for a declaration that the Rule violates the Equal Protection Clause and is preempted by federal law, and for an injunction against its enforcement.

## JURISDICTION AND VENUE

10. This Court has federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because the Plaintiff's claims arise under the Constitution and laws of the United States.

11. This Court may grant declaratory, injunctive, and other appropriate relief under 28 U.S.C. §§ 2201–2202, and 42 U.S.C. § 1983. Equitable relief is also authorized under this Court's inherent powers.

12. This Court also has equitable authority to enjoin state officials from enforcing state regulations that conflict with the Constitution or federal law. Because this action seeks only prospective declaratory and injunctive relief against state officers in their official capacities, sovereign immunity poses no bar.

13. This Court has personal jurisdiction over Defendants because they reside in and conduct a substantial proportion of their official business in New Jersey.

14. Venue is proper in this district under 28 U.S.C. § 1391(b). Defendants reside in this district, and their conduct giving rise to the claims in this lawsuit occurs in this district.

## PARTIES

15. Plaintiff Mortgage Bankers Association (MBA) is the only association representing all segments of the real estate finance industry, an industry that employs

more than 275,000 people in virtually every community in the country. Its more than 2,000 members span all aspects of real estate finance, including independent mortgage banks, mortgage brokers, commercial banks, thrifts, Wall Street conduits, life-insurance companies, credit unions, and others in the mortgage-lending field.

16. The MBA represents more than 60 independent mortgage banks, mortgage brokers, commercial banks, thrifts, Wall Street conduits, life-insurance companies, credit unions, and others in the mortgage-lending field that are headquartered in New Jersey, and hundreds more of its members originate mortgage loans in New Jersey that are immediately impacted by the Rule. Many of these members consider an applicant's credit history and other factors when setting the terms of housing financial assistance. MBA's New Jersey members include owners and managers of residential rental housing.

17. MBA's mission includes advocating for laws and regulations that allow its members to operate at their full potential, and to help its members understand and comply with the laws that govern them. To that end, MBA prepares compliance resources, convenes member working groups, and provides guidance to its members on new regulatory requirements, including the Rule.

18. Defendant Jennifer Davenport is the Attorney General of New Jersey and is sued in her official capacity. The Attorney General has statutory authority to adopt and enforce regulations implementing the New Jersey Law Against

Discrimination, N.J.S.A. 10:5-8, and heads the Department of Law and Public Safety, which includes the Division on Civil Rights. The Rule authorizes the Attorney General to bring complaints of disparate impact discrimination before the Division or in New Jersey Superior Court. N.J.A.C. 13:16-2.1(c).

19. Defendant Yolanda N. Melville is the Director of the New Jersey Division on Civil Rights and is sued in her official capacity. The Director promulgated the Rule, has statutory authority to enforce the Law Against Discrimination, N.J.S.A. 10:5-6, and is authorized by the Rule to bring complaints of disparate impact discrimination before the Division or in Superior Court. N.J.A.C. 13:16-2.1(c).

## FACTUAL ALLEGATIONS

### A. Federal Limits on Disparate Impact Liability

20. The Equal Protection Clause commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "At the heart of the Constitution's guarantee of equal protection lies the simple command that the Government must treat citizens as individuals, not as simply components of a racial, religious, sexual or national class." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 223 (2023) (*SFFA*) (cleaned up).

21. Federal statutes forbid private parties from engaging in race-based discrimination in lending and housing. 15 U.S.C. § 1691 *et seq.*; 42 U.S.C. § 3601 *et seq.*

22. To ensure that federal antidiscrimination law covered more than "overt discrimination," the Supreme Court has read these statutes to reach certain facially neutral policies that are "discriminatory in operation." *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971).

23. In the Civil Rights Act of 1991, Congress amended Title VII to codify disparate impact liability in employment, providing that an unlawful employment practice is established when a complaining party demonstrates that a particular practice causes a disparate impact and the employer fails to demonstrate that the practice is job related and consistent with business necessity. 42 U.S.C. § 2000e-2(k)(1)(A)(i).

24. In housing and housing finance, disparate impact liability originated with the courts and federal agencies. In 2015, the Supreme Court held that "disparate-impact claims are cognizable under the Fair Housing Act," subject to certain constraints. *See Inclusive Communities*, 576 U.S. at 545–46.

25. Disparate-impact liability necessarily involves "serious constitutional questions." *Inclusive Communities*, 576 U.S. at 540. For that reason, the Court observed in *Inclusive Communities* that disparate-impact liability has "always been

properly limited in key respects," and without adequate safeguards, the law coerces parties into making decisions based on race. *Id.*

26. Indeed, the Court has repeatedly condemned "outright racial balancing" as "patently unconstitutional." *See Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 730 (2007) (plurality op.) (quoting *Grutter v. Bollinger*, 539 U.S. 306, 330 (2003)).

27. As Justice O'Connor observed, it is "unrealistic to suppose that employers can eliminate, or discover and explain, the myriad of innocent causes that may lead to statistical imbalances in the composition of their work forces," and it is equally unrealistic to expect creditors to avoid all disparate impact from risk-based credit criteria. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 992 (1988) (plurality op.).

28. Without adequate limitations, a disparate impact regime pressures businesses to alter decisions to engineer a demographically acceptable bottom line; precisely the racial balancing the Court has condemned and federal law forbids.

29. Accordingly, the Supreme Court in *Inclusive Communities* established three main safeguards that it asserted are necessary to prevent disparate impact liability from sliding into an unconstitutional requirement for racial balancing.

30. First, a challenger claiming harm from a practice's disparate impact must hurdle a "robust causality requirement," that requires proof that an identified

policy of the business—and not some societal or other factor—caused the disparity, thus ensuring that businesses cannot be "held liable for racial disparities they did not create." *Inclusive Communities*, 576 U.S. at 542.

31. Second, businesses must be given "leeway" to defeat liability by establishing that the challenged policy "is necessary to achieve a valid interest." *Id.* at 541.

32. Third, while a challenger can rebut this defense, it must show that there is an alternative practice that has less disparate impact and serves the entity's legitimate needs. *Id.* at 533. In other words, the proposed alternative must serve the entity's "legitimate goals as effectively as the challenged practice" for the challenger to carry the day. *El v. SEPTA*, 479 F.3d 232, 249 (3d Cir. 2007).

33. These safeguards are not simply elements of federal disparate impact law, but necessary constitutional checks on disparate impact liability.

**B. New Jersey Adopts the Most Expansive And Aggressive Disparate Impact Regime in the Nation**

34. On December 15, 2025, the Division on Civil Rights adopted the Rule. It is the first comprehensive state regulation codifying disparate impact liability under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 *et seq*.

35. Before December 2025, no New Jersey regulation stated standards governing disparate impact claims under the LAD.

36. The Rule construes New Jersey antidiscrimination law to create a comprehensive three-step burden-shifting framework for “disparate impact liability” in employment, housing, housing financial assistance, places of public accommodation (including prisons and schools), and contracting. N.J.A.C. 13.16-1.1.

37. The Rule’s reach is vast. It governs employment, housing, real estate, housing financial assistance, public accommodations (including schools, prisons, and jails), and contracting, and it applies to covered entities of every kind, including housing providers and mortgage lenders across New Jersey. N.J.A.C. 13.16-2.1, -2.4.

38. The Rule establishes a long list of protected characteristics, including race, creed, color, national origin, nationality, ancestry, age, marital status, civil union status, domestic partnership status, affectional or sexual orientation, genetic information, pregnancy, sex, gender identity or expression, disability, and liability for military service. N.J.A.C. 13:16-1.3.

39. The Rule may be enforced by the Attorney General, the Director, other state officials, or private complainants, either before the Division or in Superior Court. N.J.A.C. 13:16-2.1(c). A covered entity found liable under the LAD faces compensatory and punitive damages, statutory penalties, attorney’s fees, and compelled changes to its business practices. N.J.S.A. 10:5-13, -14.1a.

40. Under the Rule, a facially neutral practice adopted with no discriminatory intent violates the LAD if it "actually or predictably results in a disproportionately negative effect on members of a protected class," unless the covered entity carries a demanding burden of justification. N.J.A.C. 13:16-2.1(a)–(b).

41. Several aspects of this rule exceed federal constitutional limitations.

42. Under the Rule, a challenger need not show that the covered entity's policy caused a disparity among the entity's own applicants or customers, or within any relevant qualified population. Instead, disparate impact may be established with "[n]ational, State, and local statistics," "[d]emographic or census data," "[s]urvey data," and other aggregate material, supplemented by anecdotal evidence. N.J.A.C. 13:16-2.4(a).

43. Nothing in the Rule requires that a disparity be substantial or statistically significant.

44. The Rule reaches policies before they take effect. A practice that "has not yet been implemented" may be challenged with evidence that it "will have" a disproportionate effect, so long as the practice has been "approved, announced, or otherwise finalized." N.J.A.C. 13:16-2.1(b).

45. The Rule eliminates the "leeway" federal law affords legitimate business interests.

46. Under the Rule, a covered entity must prove that its challenged practice is "necessary" to achieve a "substantial, legitimate, nondiscriminatory interest"—with "substantial interest" defined to mean a "core interest of the entity that has a direct relationship to the function of that entity"—and separately that the practice "effectively carries out the identified interest." N.J.A.C. 13:16-2.4(b); *id.* 13:16-1.3.

47. In the housing and housing financial assistance contexts, the Rule shifts the burden on less discriminatory alternatives from the challenger to the covered entity. A business facing a disparate impact challenge must prove a negative: "that there is not a less discriminatory alternative means of achieving the substantial, legitimate, nondiscriminatory interest." N.J.A.C. 13:16-2.3(b); *see also id.* 13:16-4.6(a). In the housing and housing financial assistance context, to meet its burden of showing there is no less discriminatory alternative, the business must provide "empirical evidence" and is encouraged to "identify what policy or practice options it considered and how it decided to select the policy or practice it chose." N.J.A.C. 13:16-2.3(b), (c). Federal law is precisely the opposite: the challenger bears the burden of proving that an equally effective, less discriminatory alternative exists.

48. The Rule provides that a covered entity may carry that burden by identifying "what policy or practice options it considered and how and why it decided to select the policy or practice it chose." N.J.A.C. 13:16-2.3(b). A lender

can make that showing only by measuring the demographic effects of the options it considered and choosing among them on that basis.

49. In adopting the Rule, the Division deleted a proposed requirement that a less discriminatory alternative be "equally effective," explaining that a covered entity may be liable even where an alternative would "require somewhat more labor, time, and resources," or would be "less efficient or more costly," than the challenged practice. 57 N.J.R. 2840(b) (Dec. 15, 2025).

50. The Rule also provides that an "interest in achieving diversity or increasing access for underrepresented or underserved members of a protected class" may itself qualify as a substantial, legitimate, nondiscriminatory interest. N.J.A.C. 13:16-2.4(c).

51. Thus, the rule directly incentivizes race-conscious action under New Jersey law.

**C. The Rule's Impacts on MBA and Its Members**

52. The Rule reaches decisions about making housing financial assistance available; the terms and conditions of that assistance; the type of assistance provided; the servicing of loans; and the criteria, procedures, and standards used to review and approve real estate-related transactions. N.J.A.C. 13:16-4.6(a). Every MBA member that provides housing financial assistance in New Jersey is a covered entity subject to that section. N.J.A.C. 13:16-4.6(c); *id.* 13:16-1.3.

53. Defendants have expressly identified practices to which the Rule applies, including housing provider consideration of consumer credit history and criminal history, minimum income requirements, financial standards, and income standards.[1]

54. Defendants have further stated that the Rule's provisions governing automated decision-making tools apply in all contexts covered by New Jersey's law, including lending.[2]

55. The Rule's broad expansion of disparate impact liability beyond federal constitutional boundaries denies MBA's members any assured means of compliance that federal law permits.

56. The rule compels race-conscious decision-making, because without the federal safeguards enumerated above, MBA's members cannot assure themselves of the legality of their practices except by race-conscious policymaking.

57. New Jersey has also blessed race-conscious activity. Under the Rule, an "interest in achieving diversity or increasing access for underrepresented or

[1] Press Release, N.J. Off. of Att'y Gen., *AG Platkin Announces Division on Civil Rights Adopts Landmark Rules on Disparate Impact Discrimination Under New Jersey Law* (Dec. 17, 2025), https://www.njoag.gov/ag-platkin-announces-division-on-civil-rights-adopts-landmark-rules-on-disparate-impact-discrimination-under-new-jersey-law/ (specifically identifying the policy as applying to, among other practices, "housing provider policies and practices regarding the consideration of a person's consumer credit history or criminal history; housing provider minimum income requirements, financial standards, or income standards").

[2] *Id.*

underserved members of a protected class" may itself supply the substantial, legitimate, nondiscriminatory interest that justifies a challenged practice. N.J.A.C. 13:16-2.4(c).

58. Accordingly, the Rule requires members to make the racial composition of their outcomes an aspect of business decisions.

59. The Rule thus compels members to choose between conduct federal law forbids and potential liability under state law.

60. MBA's members underwrite loans using facially neutral criteria that measure credit risk and the cost of originating and servicing a loan.

61. For example, MBA's lender members headquartered or operating in New Jersey consider an applicant's credit score and other factors beyond what is required by federal law.

62. Under the Rule, every MBA member that lends in New Jersey must immediately spend resources assessing their underwriting, pricing, servicing, and other policies to determine whether any produces a statistical disparity that could expose them to liability under the Rule. These compliance costs are unrecoverable, and they are ongoing.

63. Members that identify such disparities will face further costs revising longstanding criteria to account for New Jersey's unconstitutional expansion of disparate impact liability.

64. Furthermore, MBA's lender members operating in New Jersey and other States may be required to adopt policies for New Jersey mortgages that differ from the policies used in other states. These members will incur operational costs implementing separate policies in separate states.

65. MBA's members also include companies that own, operate, and manage residential rental housing in New Jersey.

66. The Rule governs how those members choose tenants. N.J.A.C. 13:16-4.3; *id.* 13:16-2.1(d).

67. MBA's residential housing members headquartered and operating in New Jersey use a variety of standard practices to evaluate potential tenants, including criminal history, income, and credit history (in all cases, consistent with other state and federal law). They also have policies on pets and occupancy limitations.

68. These members must immediately spend resources assessing these and other policies to determine whether any produces a statistical disparity that could expose them to liability under the Rule. These compliance costs are unrecoverable, and they are ongoing.

69. The Rule also injures MBA in its own right. MBA's core service to its members involves compliance assistance, member working groups, and guidance on new regulatory requirements. The Rule undermines these services and makes it

impossible for MBA to provide clear guidance to its members on what the law requires.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### Violation of the Equal Protection Clause of the Fourteenth Amendment (42 U.S.C. § 1983)

70. MBA realleges and incorporates by reference all preceding paragraphs.

71. The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

72. The Clause forbids a State to make decisions based on race. And a State may not compel private parties into making race-based decisions on its behalf. A State may not induce, encourage, or promote private parties to accomplish what it is forbidden to accomplish itself. *Norwood v. Harrison*, 413 U.S. 455, 465 (1973).

73. Disparate impact liability is consistent with these principles only when it is confined by the safeguards described in *Inclusive Communities*.[3]

74. The Rule eliminates those safeguards and increases the penalties for noncompliance.

[3] MBA does not contend in this action that disparate impact liability is unlawful in all its forms; it contends that the Rule discards the safeguards that make such liability permissible. MBA preserves for further review, if necessary, the broader question whether disparate impact liability, however structured, can be reconciled with the Equal Protection Clause. *See Ricci v. DeStefano, 557 U.S. 557, 594–96 (2009) (Scalia, J., concurring).*

75. The effect of the Rule is to force covered entities to reevaluate the racial and other demographic outcomes of their business practices and to compel them to select their practices because of those outcomes.

76. The Rule's coerced racial balancing serves no compelling governmental interest, is not narrowly tailored to any such interest, and could not survive any standard of review.

77. By adopting, administering, and enforcing the Rule under color of state law, Defendants deprive MBA's members of rights secured by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.

78. MBA and its members have no adequate remedy at law and will suffer irreparable harm absent declaratory and injunctive relief.

**SECOND CAUSE OF ACTION**
**Preemption by Federal Law**
**(U.S. Const. art. VI, cl. 2)**

79. MBA realleges and incorporates by reference all preceding paragraphs.

80. Under the Supremacy Clause, the Constitution and laws of the United States are "the supreme Law of the Land." U.S. Const. art. VI, cl. 2. A state law that conflicts with federal law—because compliance with both is impossible, or because the state law stands as an obstacle to the purposes of Congress—is without effect.

81. The Fair Housing Act expressly invalidates "any law of a State" that "purports to require or permit any action that would be a discriminatory housing practice" under the Act. 42 U.S.C. § 3615.

82. Federal law forbids race-conscious decision-making in the activities the Rule regulates. The Equal Credit Opportunity Act and Regulation B prohibit a creditor from considering race in any aspect of a credit transaction. 15 U.S.C. § 1691(a)(1); 12 C.F.R. § 1002.6. The Fair Housing Act prohibits racial discrimination in housing and residential lending. 42 U.S.C. §§ 3604–3605.

83. Covered entities cannot avoid liability under the Rule without engaging in race-conscious conduct.

84. The Rule therefore purports to require or permit conduct that federal law prohibits, makes it impossible for covered entities to comply with both state and federal law, and stands as an obstacle to the full purposes and objectives of Congress.

85. MBA and its members have no adequate remedy at law and will suffer irreparable harm absent declaratory and injunctive relief.

**PRAYER FOR RELIEF**

Wherefore, MBA respectfully requests that this Court:

A. Declare that the Rule violates the Equal Protection Clause of the Fourteenth Amendment;

B. Declare that the Rule is preempted by federal law, including the Fair Housing Act and the Equal Credit Opportunity Act;

C. Permanently enjoin Defendants, their agents, and their successors from enforcing the Rule;

D. In the alternative, declare invalid and permanently enjoin the enforcement of the Rule's housing and housing financial assistance provisions, N.J.A.C. 13:16-2.3 and 13:16-4.1 through -4.6, which the Rule's severability provision, N.J.A.C. 13:16-1.2(b), permits;

E. Award MBA its costs and attorney's fees, including fees under 42 U.S.C. § 1988; and

F. Grant such other relief as the Court deems just and proper.

DATED: September 3, 2026.

Respectfully submitted,

/s/ Sean J. Radomski

SEAN J. RADOMSKI
N.J. Bar No. 117792014
WILSON C. FREEMAN*
Ariz. Bar No. 036953
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, VA 22201
(202) 888-6881
SRadomski@pacificlegal.org
WFreeman@pacificlegal.org
*Attorneys for Plaintiff*

*Pro hac vice application forthcoming