State of New Jersey
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
PO Box 45029
Newark, NJ 07101

MIKIE SHERRILL
*Governor*

JENNIFER DAVENPORT
*Attorney General*

MICHAEL WALTERS
*Director*

October 29, 2026

**VIA ECF**
Honorable Julien Xavier Neals
U.S. District Court for the District of New Jersey

**Re: *Mortgage Bankers Ass'n v. Davenport*, No. 26-cv-11418**

Dear Judge Neals:

Under the Court's individual rules, Defendants, the Attorney General of New Jersey and the Director of the New Jersey Division on Civil Rights (DCR), write to request a pre-motion conference before moving to dismiss the complaint. If the Court determines such a conference is unnecessary, the Court's previously-ordered briefing schedule governs. *See* ECF 10.

## I. Background

Plaintiff Mortgage Bankers Association (MBA), an association of real estate finance companies, brings this pre-enforcement challenge to invalidate DCR's recent regulation, *Rules Pertaining to Disparate Impact Discrimination*, N.J.A.C. 13:16 (Dec. 15, 2025) (the Rule). DCR enforces the New Jersey Law Against Discrimination (LAD), which prohibits discrimination in various domains, including housing and lending. N.J.S.A. § 10:5-12(g), (i). Federal and state law have long recognized that unlawful discrimination may be demonstrated through evidence of a facially neutral practice or policy that has an unjustified disparate impact. *See Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 539 (2015) ("Recognition of disparate-impact claims is consistent with the [Fair Housing Act]'s central purpose."); *Gerety v. Atl. City Hilton Casino Resort*, 877 A.2d 1233, 1237 (N.J. 2005) (recognizing disparate-impact liability under the LAD). DCR issued the Rule "to implement the [LAD], as it pertains specifically to disparate impact liability." N.J.A.C. § 13:16-1.1.

This is what the Rule does. It defines disparate impact liability, § 13:16-2.1; explains the applicable burden of proof, §§ 13:16-2.2, -2.3; provides a non-exclusive list of evidence that may be relevant to disparate-impact claims, § 13:16-2.4; and explains how these principles apply to the LAD's various domains, such as employment, § 13:16-3.1; housing and lending, §§ 13:16-4.1, -4.6; and public accommodations, § 13:16-5.1.

## II. Discussion

Defendants will move to dismiss under Federal Rule of Civil Procedure 12(b)(1) because Plaintiff lacks standing to bring its claims. To be sure, MBA's claims also fail on the merits. The Rule does not compel MBA to engage in any unlawful discrimination and is consistent with existing standards for disparate-impact liability. Nor is the Rule preempted: it respects the Fair Housing Act's express preemption provision, 42 U.S.C. § 3615, and allows MBA and its members to comply with federal law. *See Pennsylvania v. Navient Corp.*, 967 F.3d 273, 288 (3d Cir. 2020). But the Court need not even reach these issues because it lacks jurisdiction over Plaintiff's claims.

To start, MBA has not adequately alleged standing based on the Rule's impact on its individual members. A membership organization has associational standing to bring suit if "its members would otherwise have standing to sue in their own right[.]" *Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 974 F.3d 408, 421 (3d Cir. 2020) (internal citations omitted). This requires the organization to "'make specific allegations establishing that at least one *identified* member ha[s] suffered or would suffer harm.'" *N.J. Physicians, Inc. v. President of U.S.*, 653 F.3d 234, 241 (3d Cir. 2011) (emphasis added) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)). Here, MBA's complaint fails to identify even a single one of its members, let alone allege that such a member has suffered or will suffer harm. It therefore fails to plead associational standing. *N.J. Physicians*, 653 F.3d at 241 (determining a plaintiff did not have associational standing where "only member" of organization identified in complaint lacked injury in fact).

Even if the complaint identified any MBA members, it would still fail to allege any member's "standing to sue in [its] own right." *Free Speech Coal., Inc.*, 974 F.3d at 421. Standing requires an "imminent" injury. *Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*, 80 F.4th 215, 218 (3d Cir. 2023) (*NSSF*). When a membership organization challenges a new law before facing an enforcement action, it must show that its members intend to act in a way that is "arguably forbidden by the Law, and [] the threat of enforcement … is substantial." *Id.* at 219 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). MBA's allegations fall short of these requirements. The challenged rule makes clear that the LAD prohibits "[p]ractices and policies that have a disparate impact … on members of a protected class … unless it is shown that such practices and policies are necessary to achieve a substantial, legitimate, nondiscriminatory interest and there is no less discriminatory alternative that would achieve the same interest." N.J.A.C. §

13:16-2.1; *see also id.* §§ 13:16-4.1, -4.6. MBA does not allege that any of its members have practices or policies that have such a disparate impact, much less that they cannot be justified based on a substantial, legitimate, nondiscriminatory interest and the lack of a less-discriminatory alternative. They have thus not alleged that their members will act in a way that is "arguably forbidden" by the Rule. *See NSSF*, 80 F.4th at 220 (concluding plaintiff lacks standing where the question of whether its "intended conduct is arguably forbidden is murky"). Nor does MBA allege any of the indicia of a substantial enforcement threat—such as "past enforcement" or statements by "the enforcer" about its "enforcement plans." *Id.* at 220.

MBA's suggestion that its members could "spend resources … to determine whether … a statistical disparity [] could expose them to liability under the Rule[,]" Compl. ¶¶ 62, 68, fails to establish an injury that is traceable to the challenged regulation. MBA does not allege that the Rule requires its members to conduct any analyses of statistical disparities. Instead, it alleges only that its members are voluntarily choosing to engage in statistical analyses to assess their potential legal exposure. But where enforcement or liability remains speculative, a plaintiff "cannot manufacture standing merely by inflicting harm on [itself] based on [its] fears of … future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013); *see also FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) (*Alliance*) (holding that a plaintiff also "cannot spend its way into standing simply by expending money to gather information").

MBA has also failed to plead standing based on the Rule's impact on the organization itself. It alleges that the Rule undermines MBA's "service to its members" like "guidance on new regulatory requirements." Compl. ¶ 69. But an organization cannot establish its own standing simply by alleging that it has been "caused" to spend resources on "studies," "public advocacy," or "education." *Alliance*, 602 U.S. at 394; *see also Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995) (holding ordinary program costs to educate members about a change in the law could not be injury-in-fact); *United States v. Texas*, 173 F.4th 659, 666 (5th Cir. 2026) (en banc) ("A legal-services organization cannot have Article III standing merely because a new law or regulation requires it to understand the legal change" or "adjust resources in response[.]"). And insofar as MBA alleges the Rule "makes it more difficult for [MBA] to inform" its members, that theory fails without an informational injury (e.g., provision of false information) that "directly affect[s] and interfere[s]" with MBA's organizational activities, *Alliance*, 602 U.S. at 395–96 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982))—particularly where there is no suggestion that the Rule is vague or unclear.

For these reasons and others that will be developed in full motion practice, Defendants will move to dismiss the complaint in its entirety.

Respectfully submitted,

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY

By: */s/ Nancy Trasande*
Nancy Trasande
Deputy Attorney General

cc: All counsel of record