PACIFIC LEGAL FOUNDATION

November 5, 2026

Judge Julien Xavier Neals
United States District Court for the District of New Jersey
MLK Jr. Federal Bldg. & U.S. Courthouse
Courtroom: MLK 5D
50 Walnut Street
Newark, NJ 07102

Re: *Mortgage Bankers Ass'n v. Davenport*, No. 2:26-cv-11418-JXN-AME

Dear Judge Neals:

Plaintiff Mortgage Bankers Association (MBA) writes this letter in response to Defendants' (the State's) request for a pre-motion conference. The disputes raised by the State are legal in nature and are unlikely to be resolved by conference. MBA will oppose the State's arguments in its anticipated motion to dismiss. Accordingly, MBA requests that this court forgo the pre-motion conference and order briefing on the motion to dismiss.

## I. Background

MBA is the only association representing all segments of the real estate finance industry, spanning all aspects of real estate finance. Among MBA's members in New Jersey are owners and managers of residential rental housing. MBA's mission includes advocating for laws and regulations that allow its members to operate at their full potential, and to help its members understand and comply with the laws that govern them.

MBA's lawsuit challenges New Jersey's 2025 regulation, *Rules Pertaining to Disparate Impact Discrimination*, N.J.A.C. 13:16 (Dec. 15, 2025) (the Rule). The Rule construes New Jersey antidiscrimination law to create a comprehensive framework for disparate impact liability in housing and housing financial assistance (among other things).

In *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.,* 576 U.S. 519, 540 (2015), the Supreme Court affirmed the constitutionality of disparate impact liability under the federal Fair Housing Act, but only in conjunction with strict safeguards. The Court required these safeguards

to ensure that disparate impact liability did not "displace valid governmental and private priorities" and thereby "set our Nation back in its quest to reduce the salience of race in our social and economic system." *Id.* at 544. New Jersey's rule seeks to impose disparate impact liability without these safeguards. Accordingly, MBA alleges that this Rule violates the Constitution's Equal Protection Clause and is preempted by federal statutes.

The State's letter makes clear that it will move to dismiss under Federal Rule of Civil Procedure 12(b)(1) and argue that MBA lacks standing to bring its claims.[1]

## II. Argument

The State's letter asserts that it intends to make essentially three arguments that MBA lacks standing to bring its claims. First, the State asserts that MBA has failed to identify a member that has suffered or will suffer harm and therefore has failed to plead associational standing. *See* Dkt. No. 15 at 2 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009)). Second, the State argues that injury is not imminent because MBA has failed to allege that its members will act in a way that is "arguably forbidden" by the rule. Dkt. No. 15 at 3 (citing *Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*, 80 F.4th 215, 219 (3d Cir. 2023) (*NSSF*)). Third, the State asserts that both MBA's members' and its own injuries from compliance costs are not sufficient because these are merely self-inflicted costs and a plaintiff cannot "spend its way into standing." *See* Dkt. No. 15 at 3 (citing *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) (*Alliance*)).

Associational standing requires that (1) at least one of MBA's members would have standing to sue in its own right, (2) the interests MBA seeks to protect are germane to its purpose, and (3) neither the claims nor the relief requires individual members to participate. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The State's arguments address only the first element.

Furthermore, the State's Rule 12(b)(1) motion to dismiss is a facial challenge, and as a result, the 12(b)(6) standard applies. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357–58 (3d Cir. 2014). The Court must therefore accept MBA's allegations as true and construe them in MBA's favor. At this stage, "general factual allegations of injury resulting from the defendant's conduct may suffice," because

---

[1] The State's letter asserts briefly (and incorrectly) that the Rule is "consistent with existing standards for disparate-impact liability" and that it is not preempted because it allows MBA and its members to comply with federal law. Dkt. No. 15 at 2. However, because the State does not indicate an intent to move to dismiss on these grounds, this response does not address these issues.

the court must presume those allegations embrace the specific facts needed to support the claim. *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 292–94 (3d Cir. 2005) (Alito, J.) (citation omitted). The injury-in-fact requirement is "very generous," and MBA need allege only an "identifiable trifle" of injury. *Id.* (citation omitted). Applying these standards, each of the State's challenges to MBA's standing will fail.

First, MBA's allegations unquestionably establish that at least one of its members would have standing to sue in its own right. More than sixty MBA members are mortgage lenders headquartered in New Jersey, and hundreds more originate mortgage loans there. Dkt. No. 1 ¶ 16. Each of these lenders provides housing financial assistance in New Jersey, and every MBA member that does so is a covered entity under the Rule. *Id.* ¶¶ 16, 52. Lenders that operate in several states may also have to maintain separate policies for New Jersey loans. *Id.* ¶ 64.

*Summers* does not require that a complaint name specific members to survive a facial challenge. At the pleading stage, the complaint need only offer "general factual allegations" that support the inference that specific members are injured. *Danvers*, 432 F.3d at 292 (citation omitted). *Summers* merely stands for the proposition that injury cannot be established based on the statistical probability that some member, somewhere, will be injured. 555 U.S. at 497–98. That case discussed naming members only after the district court had entered final judgment, and only in judging the sufficiency of affidavits. *Id.* at 492, 498–99. MBA does not rely on probability. The Rule reaches every MBA member that provides housing financial assistance in New Jersey, and all of those members bear the compliance costs the Complaint describes. *Summers* itself recognized that naming is unnecessary "where all the members of the organization are affected by the challenged activity," and the same logic applies when a rule reaches every member in a defined class. *Id.* at 499.[2]

Second, MBA's allegations show that injury from threatened enforcement is indeed imminent for these members. MBA's members underwrite loans using credit scores and other criteria beyond what federal law requires. Dkt. No. 1 ¶¶ 60–61. It is precisely this activity that the State thinks must be subject to its enhanced disparate impact scrutiny. Indeed, the State put out a press release singling out "housing provider policies and practices regarding the consideration of a person's consumer

---

[2] For the avoidance of doubt, MBA intends to submit declarations from injured members with its opposition to the motion to dismiss. The Court has the power "to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

credit history or criminal history; housing provider minimum income requirements, financial standards, or income standards." *Id.* ¶¶ 53–54 n.1&2. Furthermore, some of MBA's New Jersey members also own and manage rental housing and screen tenants for criminal history, income, and credit history—conduct specifically identified in the press release. *Id.* ¶¶ 16, 53–54, 65–67. The threat of enforcement here is nothing like the amorphous fear of a future lawsuit discussed in *NSSF*, 80 F.4th at 220–22.

Third, MBA's members face compliance costs now. Dkt. No. 1 ¶¶ 62–68. Compliance costs have long been recognized as an injury in fact when a law is "aimed directly at plaintiffs, who, if their interpretation of the statute is correct, will have to take significant and costly compliance measures or risk criminal prosecution." *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392 (1988). The State's cases are not to the contrary. Each involved plaintiffs who were essentially bystanders. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013); *Alliance*, 602 U.S. at 394. *Alliance* itself drew this line: "[g]overnment regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements," so "standing is usually easy to establish." 602 U.S. at 382; *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992). MBA's members are directly regulated by the Rule, and accordingly, have standing to challenge it. Dkt. No. 1 ¶ 52.

## III. Conclusion

We ask the court to deem a pre-motion conference unnecessary and order briefing on the State's 12(b)(1) motion to dismiss.

Respectfully submitted,

*<u>/s/ Sean J. Radomski</u>*

SEAN J. RADOMSKI,
N.J. Bar No. 117792014
WILSON C. FREEMAN*
Ariz. Bar No. 036953
Pacific Legal Foundation
SRadomski@pacificlegal.org
WFreeman@pacificlegal.org

*Attorneys for Plaintiff*
*pro hac vice

cc: All counsel of record